IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:24-CV-484-FL

| | | |
|---|---|---|
| MAGNOLIA VILLAGE ADC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRYCE BURKENTINE and BURKENTINE AND SONS BUILDERS, INC.,<br><br>Defendants. | ) | ORDER |

This matter is before the court upon plaintiff's motion for partial summary judgment (DE 25) and defendants'[1] motion for summary judgment (DE 28). The issues raised have been briefed fully and are ripe for ruling. For the following reasons, the court grants in part and denies in part plaintiff's motion and grants in part and denies in part defendants' motion.

**STATEMENT OF THE CASE**

Plaintiff commenced this action June 3, 2024, in the Superior Court of Wake County, North Carolina, asserting against defendant Burkentine and Sons Builders, Inc. ("Burkentine Builders") a common-law claim for breach of contract and against all defendants common-law claims for fraud and conversion and a statutory claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. Defendants removed to this court August 23, 2024, based on diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b). Plaintiff amended its complaint as of right September 17, 2024, adding factual allegations and forms of requested relief. In

[1] The court constructively amends the case caption to reflect dismissal of formerly named defendants Paul Burkentine, Michael Burkentine, and Brian Burkentine. (DE 23).

amended complaint, plaintiff seeks compensatory and actual damages in an amount to be proved at trial but not less than $3,400,000.00, exemplary and punitive damages in an amount to be proved at trial in excess of $25,000.00, treble damages under N.C. Gen. Stat. § 75-16, a constructive trust over any portion of the earnest money deposits, assets, profits, funds, or benefits received by defendants, attorneys' fees and costs, and any other relief the court may deem appropriate.

After a period of discovery, and in accordance with the case management order, plaintiff filed instant motion for partial summary judgment September 2, 2025, seeking judgment in its favor on its breach of contract claim. In support, plaintiff relies on statement of material facts and appendix of exhibits thereto comprising: 1) contract between plaintiff and defendant Burkentine Builders; 2) contracts between Burkentine Builders and non-party entities; 3) contract between plaintiff and non-party entity with related documents; 4) plaintiff's articles of organization; 5) sworn testimony by plaintiff's owner Howard Jacobson, Burkentine Builders's co-owner and defendant Bryce Burkentine, Burkentine Builders's corporate representative Michael Burkentine, Precipice Properties Group, LLC's owner Richard Wolf, and HC182 LLC's corporate representative Kenneth Dixon; 6) correspondence between the parties, their counsel, and non-party entities; 7) sworn statement of Bryce Burkentine; and 8) filings from prior litigation between the parties and non-party entities.

On the same date, defendants filed their motion seeking summary judgment in their favor on each of plaintiff's claims. Defendants rely on statement of material facts and appendix of exhibits thereto comprising, in addition to documents relied on by plaintiff: 1) additional sworn testimony by Howard Jacobson, Bryce Burkentine, Michael Burkentine, Richard Wolf, and Kenneth Dixon, along with select deposition exhibits; 2) plaintiff's June 26, 2025, supplemental

response to defendants' request for production; and 3) additional filings and court order from prior litigation between the parties and non-party entities.

On September 23, 2025, defendants responded in opposition to plaintiff's motion and plaintiff responded in opposition to defendants' motion, with plaintiff relying upon additional correspondence between the parties and sworn statement by Howard Jacobson. And eEach side has replied.

## STATEMENT OF FACTS

The undisputed facts as pertinent to the court's analysis may be summarized as follows.[2]

On or about December 1, 2022, defendant Burkentine Builders entered into a consulting services agreement ("Consulting Contract") with Precipice Properties Group, LLC ("Precipice"). (Defs.' Resp. Stmt. (DE 38) ¶ 1; Consulting Contract (DE 32-1)). The Consulting Contract provides that "[Precipice] will assist [Burkentine Builders] in the identification of markets for expansion of [Burkentine Builders]'s built-to-rent townhome business and due diligence pre-contract and post-contract on potential sites for such townhomes in accordance with the terms of this [Consulting] Contract . . . ." (DE 32-1 at 1). The Consulting Contract also provides that "if [Burkentine Builders] acquires any real property . . . as to which [Precipice] provides [diligence work] described in Exhibit B, then . . . [Burkentine Builders] shall engage [Precipice] to provide horizontal and vertical construction management services as to such Project pursuant to the forms of agreement in Exhibits C and D . . . ." (Id. at 2–3).

---

[2] Where a fact asserted in a movant's statement of material fact is undisputed, the court cites the opposing party's responsive statement where the fact is not "specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2). In addition, unless otherwise specified, page numbers in citations to the record refer to the page number of the document designated in the court's case management and electronic case filing (CM/ECF) system and not to page numbering specified on the face of the underlying document.

In early 2023, Precipice identified a land development project in Haines City, Florida, consisting of 182 improved townhouse lots on approximately 20 acres ("Property" or "Project"). (DE 38 ¶ 4). Precipice presented the Project to defendant Burkentine Builders and served as Burkentine Builders's broker and primary point of contact in negotiations for Burkentine Builders's acquisition of the Property from a limited liability company known as HC182 LLC ("HC182"). (Id. ¶ 5).

On or about April 27, 2023, defendant Burkentine Builders and HC182 entered into an agreement in which HC182 agreed to sell and convey the Property to Burkentine Builders for $9,282,000.00 ("Land Sale Contract"). (Id. ¶ 6; see Land Sale Contract (DE 32-2)). Pursuant to the Land Sale Contract, defendant Burkentine Builders paid HC182 an initial deposit of $25,000.00 at signing and second deposit of $375,400.00 within 10 days of the expiration of the due diligence period. (DE 38 ¶ 8). Defendant Burkentine Builders and HC182 amended the Land Sale Contract September 12, 2023 ("Amendment"). (Id. ¶ 10; see Amendment (DE 32-3)). Together, the Land Sale Contract and Amendment provided that defendant Burkentine Builders would forfeit its deposit of $400,400.00 ("Earnest Money Deposit") if Burkentine Builders terminated the Land Sale Contract with HC182. (DE 38 ¶ 13; DE 32-3 at 1). The Land Sale Contract also provided that defendant Burkentine Builders "is responsible for the payment of a fee of five (5%) percent of the Purchase Price to [Precipice] and Leroy Sanchez of Titan Land Company." (DE 32-2 at 9).

On October 19, 2023, defendant Burkentine Builders's counsel Mickey Thompson ("Thompson") informed Richard Wolf ("Wolf") and Howard Jacobson ("Jacobson") at Precipice via email that Burkentine Builders intended to terminate the Land Sale Contract with HC182. (DE 38 ¶ 12; see Correspondence (DE 32-12) at 6). On October 27, 2023, Thompson wrote Jacobson

via email that "[the Project is] still on the table. We are negotiating with them at this point. Do not assume that there is a termination for those projects until you hear from me." (DE 38 ¶¶ 15–16; see DE 32-12 at 7). If defendant Burkentine Builders terminated the Land Sale Contract, Burkentine Builders would forfeit its Earnest Money Deposit and Precipice would not receive a 2.5 % commission on the sale nor a vertical construction management contract for the Property. (DE 38 ¶¶ 13–14; see DE 32-2 at 9; DE 32-1 at 2–3).

On or about November 2, 2023, Precipice proposed an assignment of the Land Sale Contract from defendant Burkentine Builders to Precipice. (DE 38 ¶ 17). Regarding assignment, section 19.e of the Land Sale Contract states:

> Assignment. This [Land Sale Contract], and all rights of [Burkentine Builders] hereunder, may be assigned by [Burkentine Builders] without consent of [HC182] to an affiliate entity of [Burkentine Builders] formed for the sole purpose of owning, developing and operating the Property. This [Land Sale Contract] is not assignable by [HC182] without the consent of [Burkentine Builders]. This [Land Sale Contract] shall be binding upon the parties hereto and each of their successors and permitted assigns. The provisions hereof shall survive the execution and delivery of the deed executed hereunder and shall not be merged therein. It is acknowledged by the Parties that [Burkentine Builders] may be purchasing the property with a successor entity which has not yet been created at the time of the execution of the [Land Sale Contract]. At the election of [Burkentine Builders], [Burkentine Builders] may terminate this [Land Sale Contract] prior to the Settlement date for the purpose of executing an [Land Sale Contract] with [HC182] in the name of the successor entity. The Parties agree that no material terms of this [Land Sale Contract] shall change with respect to all time period [sic] for Due Diligence and Settlement and the Effective Date will be the same Effective Date as agreed upon and defined in this [Land Sale Contract].

(DE 32-2 at 7–8). Defendant Burkentine Builders contacted HC182 to obtain HC182's consent to an assignment of the Land Sale Contract from Burkentine Builders to Precipice. (DE 38 ¶ 18). On November 7, 2023, HC182 informed Burkentine Builders and Precipice that HC182 would not consent to the proposed assignment. (Id. ¶ 19).

On November 8, 2023, Precipice's counsel Jacobson formed plaintiff Magnolia Village ADC, LLC ("plaintiff") and emailed a copy of plaintiff's articles of organization to defendant Burkentine Builders's counsel Thompson. (Id. ¶ 22). Burkentine Builders intended to give plaintiff a chance to close on the purchase of the Property from HC182. (Id. ¶ 21). A proposed assignment was offered as a way for defendant Burkentine Builders to recover its Earnest Money Deposit if plaintiff was successful in purchasing the Property from HC182. (Pl.'s Resp. Stmt. (DE 34) ¶ 15). Plaintiff was 100 % owned by Precipice. (Id. ¶ 11).

On or about November 10, 2023, plaintiff and defendant Burkentine Builders entered into an assignment ("Assignment Contract"). (DE 38 ¶ 23; see Assignment Contract (DE 32-5)). Section B.1 of the Assignment Contract states:

> [Burkentine Builders] assigns, transfers, and conveys to [plaintiff] without recourse, except as provided in this Assignment [Contract], the [Land Sale] Contract . . . [with] HC182. Upon execution of this Assignment [Contract], [Burkentine Builders] shall have no right, title, interest, or privilege of any kind under the [Land Sale] Contract or with respect to the Property (except as an affiliate of [plaintiff]), shall not have any communication with HC182 without [plaintiff]'s written consent (except to instruct HC182 to direct all communication to [plaintiff]), . . . and shall not interfere in any way with the performance of the [Land Sale] Contract by [plaintiff] or HC182. [Burkentine Builders] will reasonably assist [plaintiff] to complete the assignment of the [Land Sale] Contract.

(DE 32-5 at 1). After executing the Assignment Contract, defendant Burkentine Builders's representatives and agents communicated with HC182 about the Land Sale Contract and Property. (See DE 38 ¶ 36). Plaintiff did not give Burkentine Builders permission to communicate with HC182. (Id.). Defendant Burkentine Builders did not direct HC182 to direct all communications to plaintiff, (id.), and Burkentine Builders did not inform plaintiff of its communications with HC182 or seek any information or guidance from plaintiff regarding same. (Id. ¶ 37).

In January 2024, defendant Burkentine Builders and HC182 agreed to terminate the Land Sale Contract, (id. ¶ 38), and defendant Bryce Burkentine, acting on behalf of Burkentine Builders,

executed with HC182 a document titled "Termination of Agreement of Sale and Mutual Release" ("Termination"). (Id. ¶ 39; see Termination (DE 32-6)). The Termination states "[t]his Termination is by and between BURKENTINE & SONS BUILDERS, INC. AND/OR ASSIGNS . . . and HC182, LLC" and provides "notice is hereby given that Burkentine & Sons Builders, Inc. is terminating the [Land Sale Contract] and as such releases all of its equitable rights in the [Property]." (DE 32-6 at 1). Defendant Burkentine Builders did not inform plaintiff that it had agreed with HC182 to terminate the Land Sale Contract or that it had executed the Termination. (DE 38 ¶ 40).

At the time defendant Burkentine Builders executed the Termination, plaintiff was a party to an agreement with Brightland Homes of Florida, LLC ("Brightland"), wherein plaintiff agreed to sell the Property to Brightland for the purchase price of $12,376,000.00 ("Resale Contract"). (Id. ¶ 41; see Resale Contract (DE 32-14) at 1–2). Brightland did not proceed to purchase the Property. (See DE 38 ¶ 45; DE 32-12 at 80).

On January 31, 2024, plaintiff filed in Florida state court a lis pendens on the Property and a lawsuit against HC182 ("Florida Action") seeking specific performance of the Land Sale Contract. (DE 38 ¶ 46). In the Florida Action, HC182 impleaded defendant Burkentine Builders as a third-party defendant and used the Termination between Burkentine Builders and HC182 as an affirmative defense against plaintiff's claims. (Id. ¶ 47).

HC182 also filed in the Florida Action a sworn statement by defendant Bryce Burkentine ("Burkentine Statement") in which Bryce Burkentine attested that defendant Burkentine Builders drafted the Land Sale Contract and Amendment and that Burkentine Builders "understood and intended that the [sic] HC182's consent was required to assign the [Land Sale] Contract unless [Burkentine Builders] assigned it 'to an affiliate entity of [Burkentine Builders]' created and

controlled by [Burkentine Builders] and 'formed for the sole purpose of owning, developing and operating the Property.'" (Burkentine Stmt. (DE 32-13) at 4). Bryce Burkentine also swore that "[plaintiff] is not a parent, subsidiary, or affiliate of [Burkentine Builders]" and that "[plaintiff] is not an affiliate entity of [Burkentine Builders]." (Id. at 5; see DE 38 ¶ 48 ("Defendants admit that HC182 filed an affidavit signed by Defendant Bryce Burkentine in which Defendant Bryce Burkentine truthfully stated [Burkentine Builders] and [plaintiff] were not affiliates.")).

Thereafter, plaintiff and HC182 settled their claims against one another, and Precipice and Burkentine Builders entered into a settlement and release agreement. (DE 38 ¶ 49; see DE 32-7 at 5–6; DE 31-5 at 224). Plaintiff reserved its rights to pursue claims against defendant Burkentine Builders. (See DE 38 ¶ 49). Additional pertinent facts will be discussed in the analysis below.

## COURT'S DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[3] Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.

[3] Internal citations and quotation marks are omitted from case citations unless otherwise specified.

242, 247–48 (1986) (holding that a fact dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255. Thus, summary judgment is warranted where "the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created" and summary judgment should be denied. Id. at 489–90.

B. Analysis

The court first considers the parties' competing motions for summary judgment on plaintiff's breach of contract claim.

1. Breach of Contract

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). A valid contract requires "mutual assent of both parties to the terms of the agreement" and is ordinarily effectuated by an offer and acceptance. Snyder v. Freeman, 300 N.C. 204, 218 (1980). "Contract interpretation is a question of law." Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc., 385 N.C. 250, 267 (2023). "In North Carolina, when a court interprets a contract, the court's primary function is to ascertain the parties' intention as expressed in their written instrument." Gasper v. EIDP, Inc., 161 F.4th 232, 239 (4th Cir. 2025). "If the plain language of a contract is clear, the intention of the parties is inferred from

the words of the contract considered as a whole." Id. A court may not consider extrinsic evidence of the parties' intent unless there is ambiguity in the contract terms that require explanation. Id.

When interpreting a contract's language, the "unambiguous terms of a contract are controlling regardless of what either party thought them to mean." Mobil Oil Corp. v. Wolfe, 297 N.C. 36, 39 (1979). "Whether a contract term is ambiguous or unambiguous in its context is a question of law." Smith-Phifer v. City of Charlotte, 118 F.4th 598, 614 (4th Cir. 2024). Terms are to be "interpreted according to their usual, ordinary, and commonly accepted meaning." Anderson v. Allstate Ins. Co., 266 N.C. 309, 312 (1966). "Parties can differ as to the interpretation of language without its being ambiguous." Walton v. City of Raleigh, 342 N.C. 879, 881–82 (1996). Even so, "[a]n ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Galloway v. Snell, 384 N.C. 285, 288 (2023). When an ambiguity exists, "the intention of the parties is a genuine issue of material fact to be determined by the jury, and summary judgment is inappropriate." Morrell v. Hardin Creek, 371 N.C. 672, 691 (2018). But "[w]hen the intent of the parties is clearly expressed in a written contract that contains no ambiguities . . . the contract may be interpreted as a matter of law." Id.

Plaintiff argues there is no genuine issue of material fact to resolve regarding plaintiff's breach of contract claim against defendant Burkentine Builders and plaintiff therefore is entitled to judgment as a matter of law. In support, plaintiff argues defendant Burkentine Builders agreed to unambiguous terms in the Assignment Contract that Burkentine Builders 1) would not communicate with HC182 other than to direct HC182 to communicate exclusively with plaintiff; and 2) would reasonably assist plaintiff to complete assignment of the Land Sale Contract. (Pl.'s Mem. (DE 26) at 7–8). As evidence of breach, plaintiff points to admissions by defendant

Burkentine Builders that, after entering into the Assignment Contract, Burkentine Builders 1) communicated with HC182 regarding the Land Sale Contract without directing HC182 to only communicate with plaintiff; and 2) terminated the Land Sale Contract with HC182 on behalf of Burkentine Builders and its assigns, including plaintiff, while representing to HC182 that Burkentine Builders maintained rights, title, and interests in the Land Sale Contract—all without notifying plaintiff of such actions. (Id. at 11–15).

Plaintiff also argues defendant Burkentine Builders's termination of the Land Sale Contract breached its contractual obligation to "not interfere in any way with the performance of the [Land Sale] Contract by [plaintiff] or HC182" and to "reasonably assist [plaintiff] to complete the assignment of the [Land Sale] Contract." (Id.).

The relevant portion of the Assignment Contract provides:

> [Burkentine Builders] assigns, transfers, and conveys to [plaintiff] without recourse, except as provided in this Assignment [Contract], the [Land Sale] Contract . . . [with] HC182. Upon execution of this Assignment [Contract], [Burkentine Builders] shall have no right, title, interest, or privilege of any kind under the [Land Sale] Contract or with respect to the Property (except as an affiliate of [plaintiff]), shall not have any communication with HC182 without [plaintiff]'s written consent (except to instruct HC182 to direct all communication to [plaintiff]), . . . and shall not interfere in any way with the performance of the [Land Sale] Contract by [plaintiff] or HC182. [Burkentine Builders] will reasonably assist [plaintiff] to complete the assignment of the [Land Sale] Contract.

(DE 32-5 at 1).

It is undisputed that, after entering into the Assignment Contract, defendant Burkentine Builders communicated with HC182 without plaintiff's written consent. (See DE 38 ¶¶ 36–37 (admitting that "[Burkentine Builders] did not inform Plaintiff of its communications with HC182 or seek any information or guidance from Plaintiff regarding its communications with HC182")). In so doing, defendant Burkentine Builders admits having violated the unambiguous term of the Assignment Contract wherein Burkentine Builders agreed to "not have any communication with

HC182 without [plaintiff]'s written consent (except to instruct HC182 to direct all communication to [plaintiff])." (DE 32-5 at 1). Defendants do not contend this contract term is "uncertain or capable of several reasonable interpretations," see Galloway, 384 N.C. at 288, and defendants provide no alternative reasonable interpretation of the term which would have permitted defendant Burkentine Builders's conduct. (See generally Defs.' Resp. (DE 36); Defs.' Mem. (DE 29)). The term is not ambiguous, and the court determines as a matter of law that defendant Burkentine Builders breached the Assignment Contract when it communicated with HC182 without plaintiff's written consent. See Morrell, 371 N.C. at 691 ("When the intent of the parties is clearly expressed in a written contract that contains no ambiguities . . . the contract may be interpreted as a matter of law.").

Defendants make several arguments in opposition and in support of defendants' respective motion for summary judgment on plaintiff's breach of contract claim, but these arguments do not persuade. Defendants argue 1) the Assignment Contract is not a valid contract because the Land Sale Contract states it can only be assigned without HC182's consent if certain conditions are met and defendant Burkentine Builders, at the relevant time, did not believe those conditions had been met; 2) even if the Assignment Contract was a valid contract, summary judgment for plaintiff is inappropriate because a fact dispute remains as to whether it was HC182 or Burkentine Builders that initiated communication with the other party; and 3) there cannot have been a breach of the Assignment Contract because plaintiff could not have guaranteed that it would have been able to purchase the Property from HC182, and even absent Burkentine Builders's actions, HC182 made its own determination not to sell the Property to plaintiff. The court addresses each argument.

As an initial matter, defendants argue the Assignment Contract is not a valid contract because the Land Sale Contract contained terms restricting assignment of the Land Sale Contract

and defendant Burkentine Builders's attempt to assign its interest in the Land Sale Contract did not meet those terms, therefore Burkentine Builders's assignment to plaintiff failed. Regarding assignment, section 19.e of the Land Sale Contract states:

> Assignment. This [Land Sale Contract], and all rights of [Burkentine Builders] hereunder, may be assigned by [Burkentine Builders] without consent of [HC182] to an affiliate entity of [Burkentine Builders] formed for the sole purpose of owning, developing and operating the Property. This [Land Sale Contract] is not assignable by [HC182] without the consent of [Burkentine Builders]. This [Land Sale Contract] shall be binding upon the parties hereto and each of their successors and permitted assigns. The provisions hereof shall survive the execution and delivery of the deed executed hereunder and shall not be merged therein. It is acknowledged by the Parties that [Burkentine Builders] may be purchasing the property with a successor entity which has not yet been created at the time of the execution of the [Land Sale Contract]. At the election of [Burkentine Builders], [Burkentine Builders] may terminate this [Land Sale Contract] prior to the Settlement date for the purpose of executing an [Land Sale Contract] with [HC182] in the name of the successor entity. The Parties agree that no material terms of this [Land Sale Contract] shall change with respect to all time period [sic] for Due Diligence and Settlement and the Effective Date will be the same Effective Date as agreed upon and defined in this [Land Sale Contract].

(DE 32-2 at 7–8).

According to defendants, the Land Sale Contract could only be assigned without HC182's consent "to an affiliate entity of [Burkentine Builders] formed for the sole purpose of owning, developing and operating the Property." (DE 29 at 5; see DE 32-2 at 7–8). Defendants argue plaintiff was not an affiliate of defendant Burkentine Builders as a matter of law because Burkentine Builders did not exercise common ownership or control over plaintiff. (DE 29 at 5–7). Defendants also argue plaintiff was not formed for the sole purpose of owning, developing, and operating the Property because the Assignment Contract states the assignment was for the purpose of facilitating "the acquisition, ownership, development, and operation of the Property and Project[.]" (DE 36 at 5–6 (emphasis in original); see DE 32-5 at 1). Defendants also claim plaintiff does not meet the sole purpose requirement because plaintiff admits it planned to resell

the Property to another purchaser. (DE 36 at 6; DE 29 at 8). Thus, because plaintiff did not meet the two requisite conditions for Burkentine Builders to assign the Land Sale Contract to plaintiff without HC182's written consent, defendants conclude the assignment failed and the Assignment Contract was therefore invalid in its entirety. (DE 36 at 3–6; see also DE 29 at 2, 5–8).

But the Assignment Contract did more than just assign defendant Burkentine Builders's rights in the Land Sale Contract to plaintiff. In addition to assigning to plaintiff rights in the Land Sale Contract, the Assignment Contract also obligated defendant Burkentine Builders to "not have any communication with HC182 without [plaintiff]'s written consent (except to instruct HC182 to direct all communication to [plaintiff])" and to "not interfere in any way with the performance of the [Land Sale] Contract by [plaintiff] or HC182." (See DE 32-5 at 1). These contractual obligations were not constrained by preconditions that plaintiff be an affiliate of defendant Burkentine Builders or that plaintiff be formed for the sole purpose of owning, developing, and operating the Property. (See id. at 1–2). Thus, even if defendants were correct that plaintiff was not defendant Burkentine Builders's affiliate and was not formed for the sole purpose of owning, developing, and operating the Property, neither determination would excuse Burkentine Builders from the obligation it undertook in the Assignment Contract to "not have any communication with HC182." (Id. at 1); Mobil Oil Corp., 297 N.C. at 39.

Moreover, North Carolina courts construe contracts as a whole and enforce contracts when unenforceable provisions can be severed. Whittaker Gen. Med. Corp. v. Daniel, 324 N.C. 523, 528 (1989). And the Assignment Contract contains a severability clause, which states, "[i]f any provision of this Assignment is deemed . . . to be unenforceable, that provision shall be stricken from the Assignment, and the remainder of the Assignment shall be reformed to conform as closely as possible to the intent of the Parties as discerned solely from the content of this Assignment."

(DE 32-5 at 2). Thus, defendants' argument that the assignment was invalid, even if true, does not nullify other provisions of the Assignment Contract, and defendants' argument that the Assignment Contract was invalid fails.

Second, defendants argue that even if the Assignment Contract was a valid contract, "there is a dispute of material facts regarding whether it was [HC182] that first contacted [Burkentine Builders] following the Assignment [Contract] with the directive to terminate the [Land Sale Contract] or close on the Property." (DE 36 at 7; see DE 38 ¶ 36; DE 29 at 9 ("[Plaintiff] has no evidence that [Burkentine Builders] contacted HC182 in violation of the Assignment.")).

But the Assignment Contract does not only prohibit defendant Burkentine Builders from contacting HC182, it also prohibits Burkentine Builders from having "any communication with HC182 without [plaintiff]'s written consent (except to instruct HC182 to direct all communication to [plaintiff])." (DE 32-5 at 1 (emphasis added)). Defendant Burkentine Builders admits it communicated with HC182 after entering the Assignment Contract. (DE 29 at 9 ("The only communication that occurred after November 8, 2023, was [HC182] contacting [Burkentine Builders] in early January 2024 . . . and [Burkentine Builders] terminated the [Land Sale Contract] upon confirmation that [HC182] would not sell to [plaintiff].")). Moreover, Burkentine Builders admits it "did not inform Plaintiff of its communications with HC182 or seek any information or guidance from Plaintiff regarding its communications with HC182." (DE 38 ¶ 37). Defendant Burkentine Builders therefore admits it breached the Assignment Contract and the fact dispute defendants raise regarding whether HC182 was first to contact Burkentine Builders is immaterial to whether Burkentine Builders had any communication with HC182. See Anderson, 477 U.S. at 247–48 (holding that a fact dispute is "material" only if it might affect the outcome of the suit).

Third, defendants argue defendant Burkentine Builders cannot have breached the Assignment Contract because "[a]ny purported action by [Burkentine Builders] that [plaintiff] contends interfered with the Assignment [Contract] after [HC182] made its own determination not to sell the Property to [plaintiff] cannot support [plaintiff]'s breach of contract claim because [plaintiff] could not complete any acquisition of the Property due to [HC182]'s own decision — not any conduct of [Burkentine Builders]," and that even absent Burkentine Builders's actions, "it still would not have guaranteed that [plaintiff] would have been able to purchase the Property from [HC182]." (DE 36 at 7; DE 29 at 10).

Regarding breach, "the inability to control the actions of a third person, whose cooperation is needed for the performance of the undertaking, is ordinarily not to be regarded as an impossibility avoiding the obligation." Lane v. Coe, 262 N.C. 8, 16 (1964). Rather, "[w]hen a contract is to do a thing which is possible in itself, the promisor will be liable for a breach thereof notwithstanding it was beyond his power individually to perform it, for it is his own fault if he undertakes to do a thing which to him is an impossibility." Id. Defendants' argument therefore does not undermine whether defendant Burkentine Builders breached the Assignment Contract. But defendants do appear to challenge in this part whether Burkentine Builders's breach of the Assignment Contract proximately caused plaintiff's alleged damages.

"A party to a contract who is injured by another's breach of the contract is entitled to recover from the latter damages for all injuries and only such injuries as are the direct, natural, and proximate result of the breach or which . . . would likely result from a breach and can reasonably be said to have been foreseen, contemplated, or expected by the parties at the time when they made the contract as a probable or natural result of a breach." Lamm v. Shingleton, 231 N.C. 10, 14 (1949). Demonstration that a plaintiff was "deprived of an opportunity to make profits" raises a

sufficient fact issue as to proximate causation. Cf. Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 546 (1987). But summary judgment should not be granted when "the facts and circumstances surrounding a claim—especially causation—remain in dispute." N. Carolina Farm Bureau Mut. Ins. Co. v. Sadler, 365 N.C. 178, 184 (2011).

Here, plaintiff's alleged injury was its inability to purchase the Property from HC182 via the Land Sale Contract. Plaintiff argues its profits would have been realized but for defendant Burkentine Builders's breach of the Assignment Contract because plaintiff entered a contract with Brightland to resell the Property wherein plaintiff would have realized $3,200,000.00 in profits and HC182 never said it would not sell the Property to plaintiff until after Burkentine Builders's communications with HC182 and execution of the Termination. (DE 33 at 20–21). This is sufficient for plaintiff to demonstrate it was "deprived of an opportunity to make profits" and summary judgment in defendants' favor is therefore inappropriate because a fact issue remains as to proximate causation. Cf. Olivetti Corp., 319 N.C. at 546.

There is also a genuine dispute of fact as to whether plaintiff's injury was "[reasonably] expected by the parties at the time when they made the contract as a probable or natural result" of defendant Burkentine Builders's communication with HC182 and termination of the Land Sale Contract—both of which actions constituted breach of Burkentine Builders's obligations under the Assignment Contract. Lamm, 231 N.C. at 14; (see DE 29 at 16; DE 33 at 24; DE 34 ¶ 75; DE 38 ¶¶ 42–43). For example, plaintiff argues that defendants' representation that plaintiff was an affiliate of defendant Burkentine Builders was made in such a way that it "would prevent [HC182] from refusing to sell the Property to Plaintiff." (DE 33 at 24).

In sum, even when "all justifiable inferences" are drawn in their favor, Anderson, 477 U.S. at 255, defendants fail to "come forward with specific facts showing that there is a genuine issue

for trial" as to whether defendant Burkentine Builders breached the Assignment Contract. Matsushita, 475 U.S. at 586–87. The court therefore grants plaintiff's motion as to the issue of breach. A triable fact issue remains as to whether defendant Burkentine Builders's breach was the proximate cause of plaintiff's injury and the amount of plaintiff's damages. Accordingly, the court denies summary judgment for both parties with respect to proximate causation and damages.

2. Fraud

Defendants seek summary judgment in their favor on plaintiff's fraud claim. In North Carolina, the elements of fraud are "(1) false representation or concealment of [a] material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party." Williamson v. Prime Sports Mktg., LLC, 101 F.4th 302, 314 (4th Cir. 2024). "A fraud claim may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." Id. "Evidence of a promise which is not fulfilled is not sufficient to support a finding of a false representation unless the evidence shows the promisor made the promise with no intention of fulfilling it." Britt v. Britt, 320 N.C. 573, 579 (1987). Intent to deceive may be inferred from circumstantial evidence. Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 569 (1988). When a party's intent is at issue, "the general rule is that it is a question of fact to be determined by a jury." United Lab'ys, Inc. v. Kuykendall, 322 N.C. 643, 663 (1988).

As for the fourth element, "any reliance on the allegedly false representations must be reasonable." Cummings v. Carroll, 379 N.C. 347, 371 (2021); see Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 513 (4th Cir. 1999) ("[A] plaintiff claiming fraud must show injury proximately caused by its reasonable reliance on a misrepresentation."). "Whether each of the

elements of actual fraud and reasonable reliance are met are ordinarily questions for the jury unless the facts are so clear that they support only one conclusion." Head v. Gould Killian CPA Grp., P.A., 371 N.C. 2, 9 (2018); see Adams v. Mills, 312 N.C. 181, 193 (1984) ("[T]he proximate cause of an injury is ordinarily a question for the jury."). Summary judgment for the defendant on a fraud claim is inappropriate where the defendant misrepresents the services to be provided and the plaintiff presents evidence showing she relied on the defendant's representation. See Head, 371 N.C. at 10–11. Yet summary judgment for the defendant is permitted where the defendant made attempts to fulfill contractual promises and evidence does not support that the defendant's statements were false at the time they were made. Value Health, 385 N.C. at 276.

Here, defendants argue there is no genuine issue of material fact on plaintiff's fraud claim because plaintiff relies solely on factually unsupported speculation and "fails to proffer any evidence" regarding whether defendants acted with intent to deceive plaintiff. (DE 29 at 14–15). Plaintiff responds that several pieces of circumstantial evidence raise genuine and material fact issues as to whether defendants "intentionally deceived plaintiff to enter the Assignment [Contract]." (Pl.'s Resp. (DE 33) at 21–25).

Intent to deceive may be inferred from circumstantial evidence. Myers & Chapman, 323 N.C. at 569. It is undisputed that the Assignment Contract states defendant Burkentine Builders and plaintiff "are affiliates" and that the Assignment Contract "contains the entire agreement of the parties with respect to assignment" of the Land Sale Contract. (DE 32-5 at 2; DE 38 ¶ 23). But defendants claim the parties are not and were never affiliates because an affiliate relationship requires "some degree of ownership or control" and therefore the parties did not create a valid assignment absent additional documentation showing such ownership or control. (DE 29 at 6–7; DE 38 ¶ 33). Indeed, defendant Bryce Burkentine attested that defendant Burkentine Builders

drafted the Land Sale Contract and Amendment and that Burkentine Builders "understood and intended that the [sic] HC182's consent was required to assign the [Land Sale] Contract unless [Burkentine Builders] assigned it 'to an affiliate entity of [Burkentine Builders]' created and controlled by [Burkentine Builders]." (DE 32-13 at 4).

The court finds there is sufficient circumstantial evidence regarding defendants' intent to deceive plaintiff such that summary judgment is inappropriate. As in Head where the plaintiff presented evidence that the defendant misrepresented the status of plaintiff's tax returns and showed she relied on the defendant's representation, 371 N.C. at 10–12, plaintiff here presents evidence allowing a factfinder to find that defendants misrepresented in the Assignment Contract that the parties were affiliates and that plaintiff relied on defendants' contractual representation. (DE 33 at 21–24). And unlike in Value Health where the undisputed facts demonstrated that the defendant made attempts to fulfill the defendant's contractual promises to the plaintiff, 385 N.C. at 276, defendants here do not present evidence of efforts to assist plaintiff in acquiring the Property as contractually promised, nor evidence that defendants attempted to abide by the promise not to interfere with the Land Sale Contract. Rather, defendants admit that defendant Burkentine Builders "did not inform" plaintiff or "seek any information or guidance" from plaintiff regarding defendants' communications with HC182. (DE 38 ¶ 37).

Thus, because defendants represented that the parties were affiliates in the Assignment Contract "even though the parties never contemplated or agreed that [Burkentine Builders] would have any ownership interest in or control over Plaintiff," (DE 33 at 22; see DE 32-5 at 1), a reasonable juror could find this circumstantial evidence shows defendants made "an affirmative misrepresentation of a material fact" or "fail[ed] to disclose a material fact relating to" the parties' transaction. Williamson, 101 F.4th at 314; see Myers & Chapman, 323 N.C. at 569. Alternatively,

the undisputed facts call into question whether defendants made promises in the Assignment Contract that the parties are affiliates and to assist plaintiff in acquiring the Property "with no intention of fulfilling" them. Britt, 320 N.C. at 579.

Additionally, it is undisputed that defendant Burkentine Builders agreed to "not have any communication with HC182," to "not interfere in any way with the performance of the [Land Sale] Contract by [plaintiff] or HC182," and to "reasonably assist [plaintiff] to complete the assignment of the [Land Sale] Contract." (DE 32-5 at 1). But it is also undisputed that defendant Burkentine Builders thereafter "did not inform Plaintiff of its communications with HC182 or seek any information or guidance from Plaintiff regarding its communications with HC182." (DE 38 ¶¶ 36–37). And it is undisputed that defendants did not inform plaintiff that, after executing the Assignment Contract with plaintiff, defendant Burkentine Builders agreed with HC182 to terminate the Land Sale Contract and executed the Termination. (Id. ¶¶ 38–40). A reasonable person could find this evidence demonstrates defendant Burkentine Builders intended to deceive plaintiff, and since the issue of a party's intent generally "is a question of fact to be determined by a jury," United Lab'ys, 322 N.C. at 663, the court finds there is a genuine issue of material fact as to whether defendants intended to deceive plaintiff.

Defendants' remaining arguments for summary judgment on plaintiff's fraud claim do not overcome this conclusion. Defendants argue 1) plaintiff's fraud claim originates in contract law rather than in tort; 2) any reliance by plaintiff on the alleged promises made by defendant Burkentine Builders was unreasonable; and 3) plaintiff cannot show recoverable damages proximately caused by defendants. (DE 29 at 15–16).[4] The court proceeds through each argument.

---

[4] Defendants also argue in a footnote that "[n]one of the causes of action in [plaintiff]'s Amended Complaint allege any actions or representations by Bryce Burkentine that are separate from [Burkentine Builders]," and consequently, "Bryce Burkentine should not be subject to individual liability for any action he took as an authorized agent of [Burkentine Builders] . . . and all causes of action asserted against him in his individual capacity should be

Defendants first argue "[e]ven if [Burkentine Builders] violated the Assignment [Contract] . . . the issue remains a contract dispute rather than a tort," and plaintiff's claim is therefore barred by North Carolina law because "the alleged harm arises solely from the failure to perform contractual obligations." (Id. at 14 (citing Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164–65 (4th Cir. 2018))). This rule is recognized as North Carolina's economic loss rule, which "prevent[s] parties from asserting tort claims for a simple breach of contract." Legacy Data, 889 F.3d at 164. As the Fourth Circuit explains:

> The distinction between tort and contract possesses more than mere theoretical significance. Parties contract partly to minimize their future risks. Importing tort law principles of punishment into contract undermines their ability to do so. Punitive damages, because they depend heavily on an individual jury's perception of the degree of fault involved, are necessarily uncertain. Their availability would turn every potential contractual relationship into a riskier proposition.

Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 330 (4th Cir. 1994); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998). But when a defendant has no intention of fulfilling contractual obligations "from the very beginning," such action constitutes fraud and is not barred by the economic loss rule. Legacy Data, 889 F.3d at 166.

Here, the court found plaintiff raises a genuine, material fact issue as to whether defendants intended to deceive plaintiff regarding the Assignment Contract, including in its formation, thus constituting the "independent tort" of fraud. See Strum, 15 F.3d at 330. For example, a reasonable juror could conclude that defendants' contractual statement that plaintiff was defendant Burkentine

---

dismissed." (DE 29 at 13 n.4). Defendants cite no case law to support this argument, which stands contrary to well-established North Carolina law. See, e.g., Woodson v. Rowland, 329 N.C. 330, 348 (1991) ("[A]gents of corporations and the corporations themselves may both be held liable for the agent's torts committed in the course and scope of the agency relationship."); Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 518 (1990) ("A corporate officer can be held personally liable for torts in which he actively participates."). And as discussed, there is record evidence supporting defendant Bryce Burkentine's personal involvement in the disputed transaction forming the basis for plaintiff's claims. (See, e.g., DE 38 ¶ 39 (admitting defendant Bryce Burkentine, acting on behalf of defendant Burkentine Builders, executed the Termination with HC182); id. ¶ 48 ("Defendants admit that HC182 filed an affidavit signed by Defendant Bryce Burkentine in which Defendant Bryce Burkentine truthfully stated [Burkentine Builders] and [plaintiff] were not affiliates.")). The court therefore rejects defendants' argument.

Builders's affiliate in the Assignment Contract and later sworn testimony that plaintiff was not Burkentine Builders's affiliate provides evidence that defendants never intended to establish Burkentine Builders and plaintiff as affiliates. (DE 38 ¶ 23; DE 32-13 at 5); see United Lab'ys, 322 N.C. at 663 (holding that a party's intent "is a question of fact to be determined by a jury").

And the cases defendants cite to support their economic loss rule argument are distinguishable. Unlike in Legacy Data where the defendants' duty to the plaintiff arose "only as a result of [the parties'] contract," 889 F.3d at 167, plaintiff here raises fact disputes that could support that defendants failed to disclose their understanding of the term "affiliate" which deceived plaintiff into believing the parties could create a valid assignment and entering the Assignment Contract. (DE 33 at 21–24). A jury could therefore find here that defendants' duty arose not only from the Assignment Contract, but also from defendants' common law obligation "to disclose a material fact relating to" the Assignment Contract in its formation. Williamson, 101 F.4th at 314. And unlike in Broussard where the defendant presented a plausible argument for an interpretation of the contract which validated its alleged misconduct, 155 F.3d at 346–47, here the undisputed facts do not suggest the parties' dispute arose from a mere difference in contract interpretation where defendants do not provide a "plausible argument for an interpretation of the [Assignment Contract] that validates its conduct." See id. at 346; (DE 29 at 5–10). Moreover, the Broussard action centered on "the interpretation of different [contracts] and over [the defendant's] performance under those [contracts]." 155 F.3d at 345. But whereas in Broussard the at-issue conduct arose solely "in the course of contractual performance," id. at 347, here plaintiff alleges defendants deceived plaintiff "[a]t the time the parties entered into the Assignment [Contract]" evidencing intent to deceive plaintiff into entering the Assignment Contract. (See DE 33 at 21–24). Thus, defendants' economic loss rule argument fails.

Second, defendants argue plaintiff does not raise a fact issue as to whether plaintiff was in fact deceived by defendants' alleged misrepresentation because "all allegations of reliance are unreasonable." (DE 29 at 15). The fourth fraud element requires plaintiff to have relied on defendants' misrepresentation and "any reliance on the allegedly false representations must be reasonable." Cummings, 379 N.C. at 371. Reasonable reliance is a question for the jury "unless the facts are so clear that they support only one conclusion." Head, 371 N.C. at 9.

The facts here are not so clear that they only support a conclusion in defendants' favor. Defendants argue plaintiff "entered into the purported Assignment [Contract] with full knowledge that [plaintiff] might not become the owner of the Property" and that "there was no provision in the Assignment Contract by which [plaintiff] could force defendant [Burkentine Builders] to proceed to a closing on a purchase of the Property pursuant to the [Land Sale Contract]." (DE 29 at 15–16). Thus, defendants argue, plaintiff "could not have been reliant on or induced by any 'promises' of [Burkentine Builders] since [plaintiff] knew that the purported Assignment [Contract] created only a ***potential opportunity*** to purchase the Property, the success of which always hinged and was dependent upon the decision of [HC182], which was not a party to, and not bound by, the purported Assignment [Contract]." (Id. at 16 (emphasis in original)).

But plaintiff disputes defendants' factual premise. (See DE 34 ¶ 19 ("Disputed. There is no basis for Defendants' implication and assertion that Plaintiff ever understood or believed it might not become owner of the Property because of any refusal of [HC182] to close on the Property with Plaintiff.")). Moreover, plaintiff responds that its reliance was reasonable as defendants represented that HC182 would not close with Precipice because Precipice was not an affiliate of defendant Burkentine Builders, and defendants represented that plaintiff was an affiliate of Burkentine Builders, "which would prevent [HC182] from refusing to sell the Property to

Plaintiff." (DE 33 at 24). These disputes over facts and the reasonableness of plaintiff's reliance on defendants' representations are questions to be resolved by the jury. See Head, 371 N.C. at 9.

Regarding plaintiff's reasonable reliance, defendants also argue that "a plaintiff who relies upon a misrepresentation that is directly contradicted by a subsequent written agreement cannot establish justifiable reliance sufficient to support a claim of fraud or negligent misrepresentation as a matter of law." (DE 29 at 15 (quoting Caper Corp. v. Well Fargo Bank, N.A., 578 F. App'x 276, 282 (4th Cir. 2014))). But this rule is inapplicable to the present facts where defendants do not show plaintiff entered a subsequent written agreement that contradicts defendants' alleged misrepresentation in the Assignment Contract. Moreover, an exception to the Caper Corp. rule applies where plaintiff alleges defendants "misrepresented the character or terms of the [contract] itself." 578 F. App'x at 283. The court therefore rejects defendants' reasonable reliance argument.

Third, defendants argue plaintiff's alleged damages were not proximately caused by defendants. "[A] plaintiff claiming fraud must show injury proximately caused by its reasonable reliance on a misrepresentation." Food Lion, 194 F.3d at 513. "[T]he proximate cause of an injury is ordinarily a question for the jury," Adams, 312 N.C. at 193, "unless the facts are so clear that they support only one conclusion." Head, 371 N.C. at 9. Defendants argue plaintiff's alleged damages were not proximately caused by defendants because "the undisputed facts show [HC182] was unwilling to consent to an assignment to [plaintiff] and was unwilling [to] close on any sale of the Property to [plaintiff]." (DE 29 at 16). Plaintiff responds that defendants' argument is unrelated to defendants' alleged representation that plaintiff was defendant Burkentine Builders's affiliate, "which would prevent [HC182] from refusing to sell the Property to Plaintiff." (DE 33 at 24). Because the parties dispute whether HC182 was capable of refusing to close on any sale

with plaintiff, (DE 38 ¶¶ 42–43; DE 34 ¶ 75), proximate causation is inappropriate for resolution as a matter of law. See Adams, 312 N.C. at 193; Head, 371 N.C. at 9.

In sum, the court concludes plaintiff raises fact issues as to 1) whether defendants intended to deceive plaintiff by misrepresenting that plaintiff and defendant Burkentine Builders were affiliate entities as required to complete a valid assignment; and 2) whether defendants misrepresented their intentions to fulfill Burkentine Builders's obligations under the Assignment Contract. See Williamson, 101 F.4th at 314. Plaintiff therefore provides sufficient evidence to support a fraud claim independent of its breach of contract claim, so defendants' economic loss rule argument fails. A fact issue also remains as to whether plaintiff's injury was proximately caused by a reasonable reliance on defendants' alleged misrepresentation. See Food Lion, 194 F.3d at 513. The court therefore denies defendants' motion for summary judgment as to plaintiff's fraud claim where the evidence permits more than one reasonable inference as to material fact issues. See Myrick, 395 F.3d at 489–90.

3. North Carolina Unfair and Deceptive Trade Practices Act

Defendants seek summary judgment in their favor on plaintiff's North Carolina Unfair and Deceptive Trade Practices Act claim. A claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1 ("UDTPA"), requires showing that "the defendant committed: (1) an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or to his business." Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021). As for the second element, defendants do not dispute that execution of the Assignment Contract to further a real property transaction qualifies as a practice "in or affecting commerce." (See DE 29 at 20–22); see also Hardy v. Toler, 288 N.C. 303, 311 (1975) (holding as a matter of law that the unfair or

deceptive act was "in commerce" where the issue was not in dispute). And the court concludes proximate causation is a question for the jury where plaintiff's fraud and UDTPA claims are supported by the same facts, the legal standards for this element within each claim are the same, and defendants do not raise distinct arguments addressing proximate causation under plaintiff's UDTPA claim. See Adams, 312 N.C. at 193; (see also DE 29 at 22 (arguing that plaintiff "cannot show [Burkentine Builders] is the proximate cause of [plaintiff]'s alleged damages")).

Thus, defendants' motion for summary judgment on plaintiff's UDTPA claim hinges on whether defendants show there is no genuine dispute of material fact over whether defendants committed an unfair or deceptive act or an unfair method of competition. See Foodbuy, 987 F.3d at 121. "[U]nder N.C.G.S. § 75-1.1, it is a question for the jury as to whether the defendants committed the alleged acts, and then it is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice." United Lab'ys, 322 N.C. at 664. North Carolina courts recognize a practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of N. Carolina, Inc., 362 N.C. 63, 72 (2007). To show a deceptive act, a plaintiff need only show that a trade practice "has the capacity or tendency to deceive." Id. "Proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive acts." Winston Realty Co. v. G.H.G., Inc., 314 N.C. 90, 97 (1985). But "[u]nlike a claim based upon fraud, proof of actual deception is not necessary" and "the question whether the defendant acted in bad faith is not pertinent to whether his representation violated N.C.G.S. § 75-1.1." Pearce v. Am. Def. Life Ins. Co., 316 N.C. 461, 471 (1986). Indeed, "good faith is not a defense to an alleged violation of G.S. 75-1.1." Marshall, 302 N.C. at 548.

"A simple breach of contract is not unfair or deceptive, however, absent substantial aggravating circumstances." Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch, 80 F.3d 895, 903 (4th Cir. 1996). "Examples of such aggravating and egregious behavior include: (1) lying and concealing a breach combined with acts to deter further investigation; and (2) intentional deception for the purpose of continuing to receive the benefits of an agreement." Foodbuy, 987 F.3d at 121. "[U]nfairness or deception either in the formation of [a] contract or in the circumstances of its breach may establish the existence of substantial aggravating circumstances sufficient to support an unfair and deceptive trade practices claim." Value Health, 385 N.C. at 277.

Defendants argue that plaintiff "has not shown any fraudulent or deceptive conduct by defendants and has instead repackaged its breach of contract claim," thus entitling defendants to summary judgment. (DE 29 at 21). Defendants point to facts—which are disputed by plaintiff—that before termination of the Land Sale Contract, HC182 initiated communication with defendants, notified defendants that HC182 would not permit an assignment to plaintiff, and justified its decision not to sell to plaintiff "upon realizing that [plaintiff] was not [Burkentine Builders] or a [Burkentine Builders] affiliated entity." (Id.). Thus, defendants contend they are entitled to summary judgment because no evidence suggests that defendants' conduct constitutes unfair or deceptive practices under the UDTPA.

But the disputed facts upon which defendants rely must be resolved by a jury before the court can determine whether "these proven facts constitute an unfair or deceptive trade practice." United Lab'ys, 322 N.C. at 664. For example, plaintiff argues that defendants misrepresented the parties' affiliate relationship and defendants' intentions to create a valid assignment under the Assignment Contract to induce plaintiff to enter the Assignment Contract, which exceeds "the

bounds of a mere breach of contract." (DE 33 at 24–26). Based on the facts a jury finds at trial, the court may then find that defendants engaged in a practice that "has the capacity or tendency to deceive." Walker, 362 N.C. at 72.

Regardless, summary judgment in defendants' favor on plaintiff's UDTPA claim is inappropriate where the court has determined that plaintiff raises fact issues as to its fraud claim, which "necessarily constitutes" fact issues as to plaintiff's UDTPA claim. Winston Realty Co., 314 N.C. at 97; see Foodbuy, 987 F.3d at 122 ("[W]hat constitutes an unfair and deceptive trade practice . . . requires less burdensome elements of proof than fraud."). Fact issues remain as to the circumstances surrounding defendants' alleged conduct and whether defendants' actions were the proximate cause of plaintiff's injuries.

As a final matter, defendants argue plaintiff "does not allege damages separate from its breach of contract claim, thus warranting summary judgment in Defendant's [sic] favor" on plaintiff's UDTPA claim. (DE 29 at 22). Defendants also argue that "punitive damages are not available for violations of the UDTPA." (Id. at 22 (citing Hollaway v. Wachovia Bank & Tr. Co., N.A., 339 N.C. 338, 348 (1994))). Defendants are incorrect on their first point; plaintiff claims entitlement to treble damages under N.C.G.S. § 75-16. (DE 15 ¶ 50). But defendants' second argument is more nuanced. While the Hollaway court only ruled that a "claim based on the Debt Collection Act would not support punitive damages," the court pointed to N.C.G.S. § 75-16's provision that a "person injured by violation of Chapter 75 shall receive treble damages" and cited a lower court's holding that "punitive damages [are] not recoverable under Chapter 75." 339 N.C. at 348 (citing Pinehurst, Inc. v. O'Leary Bros. Realty, Inc., 79 N.C. App. 51, 63, disc. rev. denied, 316 N.C. 378 (1986)). This court therefore agrees with defendants that punitive damages are not available for violations of the UDTPA where the treble damage award under Chapter 75 already

"consists of a punitive element," Pinehurst, 79 N.C. App. at 62, and treble damages are "automatic once a violation is shown." Marshall v. Miller, 302 N.C. 539, 547 (1981).

That said, plaintiff does not claim punitive damages on its UDTPA claim under N.C.G.S. Chapter 75, rather, plaintiff claims punitive damages on its fraud claim under N.C.G.S. Chapter 1D. (DE 15 ¶¶ 34, 52–56); see also N.C.G.S. § 1D-15 (permitting punitive damages where a plaintiff proves an aggravating factor of fraud by clear and convincing evidence). "A plaintiff is not precluded from seeking both punitive and treble damages; only for purposes of an actual recovery must an election between the two be made." Hollaway, 339 N.C. at 349; see Broussard, 155 F.3d at 346 n.7 (noting plaintiffs chose to substitute larger figure of treble compensatory damages in place of jury-awarded punitive damages). Accordingly, plaintiff may at this juncture seek both treble damages on its UDTPA claim under N.C.G.S. § 75-16 and punitive damages on its fraud claim under N.C.G.S. § 1D-15.

The court therefore denies defendants' motion for summary judgment as to plaintiff's UDTPA claim. See Myrick, 395 F.3d at 489–90.

4. Conversion

Defendants seek summary judgment in their favor on plaintiff's conversion claim. Under North Carolina law, there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523 (2012). "The tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Id. "[W]here a defendant simply violates a contractual provision and undertakes

no independent legal duty, . . . the economic loss rule applies to bar tort claims such as conversion." Legacy Data, 889 F.3d at 166.

Defendants argue the economic loss rule bars plaintiff's conversion claim where plaintiff does not show defendants violated a non-contractual independent legal duty that defendants owed plaintiff. (DE 29 at 17–18). Defendants also argue that intangible interests such as contract rights cannot support a conversion claim, which applies only to goods or personal chattels, and point to the undisputed fact that defendants never recovered the Earnest Money Deposit and therefore cannot be held liable for conversion. (Id. at 18–19). In opposition to defendants' instant motion, plaintiff does not seek to advance its conversion claim. (See generally DE 33). To the extent the court must undertake independent review of the claim to determine whether summary judgment is appropriate, the court agrees with defendants that contractual rights such as the right to purchase land cannot support a claim for conversion. Variety Wholesalers, LLC, 365 N.C. at 523 (stating conversion claim applies to "goods and chattels"); Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776, 785 (4th Cir. 2023); see also Duffy v. Camp, 287 N.C. App. 46, 68 (2022) ("[O]nly goods and personal property are properly the subjects of a claim for conversion."). The court therefore grants defendants' motion for summary judgment on plaintiff's conversion claim. See Matsuhita, 475 U.S. at 586–87.

Defendants also in this part seek summary judgment on plaintiff's claim for remedy by establishment of a constructive trust. In North Carolina, a constructive trust may be "imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through . . . circumstance[s] making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Variety Wholesalers, 365 N.C. at 530. Defendants argue the person against whom a constructive trust might be imposed

must have the property at issue in their possession, (DE 29 at 23 (citing Pender v. Bank of Am. Corp., 788 F.3d 354, 368–69 (4th Cir. 2015))), and defendants repeatedly represent they do not have the property at issue, including the Earnest Money Deposit, in their possession. (Id. at 23–24). In opposition to defendants' instant motion, plaintiff does not seek to advance its claim for remedy by a constructive trust. (See generally DE 33). To the extent the court must undertake independent review of plaintiff's claim for remedy to determine whether summary judgment is appropriate, the court agrees with defendants that plaintiff does not a raise a genuine issue of material fact as to whether defendants possess the property at issue. (See id.; DE 29 at 23–24). Imposition of a constructive trust is therefore not an appropriate remedy, see Pender, 788 F.3d at 368–69, and the court grants defendants' motion as to plaintiff's claim for remedy by establishment of a constructive trust.

**CONCLUSION**

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART plaintiff's motion for partial summary judgment (DE 25) and GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment (DE 28).

The court GRANTS summary judgment in plaintiff's favor as to the breach element of plaintiff's breach of contract claim, however, issues of proximate causation and damages remain to be determined by a factfinder at trial.

The court GRANTS summary judgment in defendants' favor on plaintiff's conversion claim and request for establishment of a constructive trust.

The court DENIES defendants' motion for summary judgment as to plaintiff's breach of contract, fraud, and North Carolina Unfair and Deceptive Practices Act claims.

Where claims remain for trial in accordance with case management order entered November 15, 2024, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial.

The parties are DIRECTED to confer and file within **14 days** from the date of this order a joint status report informing of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates.

In addition, the parties shall specify if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the proposed date for completion of such.

SO ORDERED, this the 29th day of September, 2026.

Louise W. Flanagan

LOUISE W. FLANAGAN
United States District Judge